UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

**CIVIL ACTION NO. 12-101-DLB**

**JOYCE E. COOPER**                                                                      **PLAINTIFF**

vs.                              **MEMORANDUM OPINION & ORDER**

**CAROLYN W. COLVIN, Commissioner**
**SOCIAL SECURITY ADMINISTRATION**                                **DEFENDANT**

****************

## I. INTRODUCTION

Plaintiff brought this action pursuant to 42 U.S.C. Section 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and the parties' dispositive motions, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## II. FACTS AND PROCEDURAL POSTURE

On August 17, 2009, Plaintiff Joyce Cooper applied for disability insurance and Supplemental Security Income benefits. In her application, Plaintiff claimed debilitating impairments due to Chronic Obstructive Pulmonary Disease (COPD), lung disease, asthma, tuberculosis, chest pain, shortness of breath, and depression. (Doc. # 7-1, at 87). The Social Security Administration ("agency") denied these applications initially and upon reconsideration. (Doc. # 7-1, at 87-102). Plaintiff then requested an administrative hearing, which was conducted before Administrative Law Judge (ALJ) Todd Spangler on

1

September 16, 2010. (Doc. # 7-1, at 44).

At the hearing, Plaintiff testified that she last worked in April of 2005 as a cable puller, when her worsening lung problems forced her to quit. (Doc. # 7-1, at 49). Plaintiff has not worked since then, with the exception of a year long stint as a consignment store owner. (Doc. # 7-1, at 52). Plaintiff claimed that even then, her respiratory problems made it impossible for her to work, as people's strong perfume would "send [her] into a coughing spell." (Doc. # 7-1, at 52).

After considering the evidence of record, including witness statements and treatment records from various medical professionals, ALJ Spangler determined that Plaintiff was not entitled to benefits. (Doc. # 7-1, at 37-38). The ALJ found that Plaintiff did suffer from some serious impairments and that those impairments prevented her from doing her past work as a cable puller and salesperson. (Doc. # 7-1, at 36-37). But based on the testimony of a vocational expert (VE), the ALJ determined that Plaintiff was still able to perform jobs that existed in significant numbers in the national economy. (Doc. # 7-1, at 37-38). Consequently, Plaintiff was not disabled under the Social Security Act and was not entitled to benefits. (Doc. # 7-1, at 37-38).

Plaintiff appealed the Commissioner's decision to this Court on May 30, 2012 (Doc. #1) which has culminated in cross motions for summary judgment which are ripe for review (Docs. # 12, 13).

### III. STANDARD OF REVIEW

The Court's review is limited to determining whether the Commissioner's decision followed proper legal standards and whether the Commissioner's findings are supported by substantial evidence . *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir.

2007). Under this deferential standard, courts will not substitute their judgment for that of the ALJ. *Id.* The Court does not resolve evidentiary conflicts or decide questions of credibility. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Interpretations of statutes and agency regulations are questions of law, which the Court will review de novo. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007).

## IV. DISCUSSION

To determine whether an applicant qualifies for disability insurance and Supplemental Security Income, the Commissioner proceeds through a sequential five-step process:

- First, the Commissioner considers whether the claimant is involved in "substantial, gainful" work activity. If so, the claimant is not entitled to benefits. If not, the Commissioner proceeds to the next step.

- Second, the Commissioner determines whether the claimant suffers from any serious mental or physical impairments. If not, the claimant is not entitled to benefits. If so, the Commissioner proceeds to the next step.

- Third, the Commissioner compares the claimant's physical or mental impairments with the automatic triggers for disability payments that are listed in agency regulations. If the claimant's impairments match one of those listed, then the claimant automatically qualifies for benefits. If the claimant does not automatically qualify, then the Commissioner proceeds to the next step.

- Fourth, the Commissioner determines whether the claimant can perform past relevant work. If so, the claimant is not entitled to benefits. If not, the Commissioner proceeds to the fifth and final step.

- Fifth, the Commissioner determines whether the claimant can do other work in the national economy. If so, then the claimant is not entitled to benefits. If, however, there is insufficient work that the plaintiff can perform, then the claimant will receive benefits. At this fifth and final step, the question is not whether Plaintiff is disabled, but whether that disability prevents Plaintiff from doing any type of work that exists in significant numbers

20 C.F.R. § 404.1520; *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

Notably, the burden of proof shifts to the Commissioner at step five. *Walters*, 127 F.3d, at 529. If the Commissioner finds that the claimant suffers from serious impairments and cannot perform past relevant work, then the Commissioner must show that substantial work exists in the national economy. *Id.* Otherwise, the claimant's application for disability must be granted.

There is little disagreement regarding the first four of the five steps. At step one, Plaintiff has not held a job since April 27, 2009. (Doc. # 7-1, at 33.) At step two, the ALJ found that Plaintiff does suffer from severe impairments, but under step three, none of those impairments automatically trigger disability under agency regulations. (Doc. # 7-1, at 33-34.) And at step four, ALJ Spangler determined that Plaintiff is unable to perform her past relevant work. (Doc. # 7-1, at 36-37.)

Plaintiff contends that the ALJ erred at the final step–in finding that despite Plaintiff's limitations, there were enough jobs in the national economy that Plaintiff could perform. (Doc. #12-1, at 1). This error, according to Plaintiff, derives from two significant mistakes: failing to give proper weight to the opinion of Dr. Sandra Schuldheisz and relying on flawed vocational expert (VE) testimony.

For reasons set forth below, the Court rejects these arguments and holds that ALJ Spangler's decision was made according to proper legal principles and is supported by substantial evidence.

**A.     The Commissioner gave appropriate weight to the opinion of Dr. Schuldheisz**

Much of Plaintiff's criticisms of the ALJ revolve around the little weight afforded to Dr. Schuldheisz, who began treating the Plaintiff just months before she applied for

benefits. (Doc. # 7-1, at 513). This, Plaintiff argues, violates the "treating physician rule"–that, absent contrary medical evidence, a treating physician's opinion is accorded controlling weight. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); 20 C.F.R. § 416.927(c)(2).

> **1. Dr. Schuldheisz was not a "treating physician" under agency laws and regulations.**

The Court finds that Dr. Schuldeisz is not a treating source with within the meaning of social security regulations. Those regulations define a treating source as a source who treats a patient "with a frequency consistent with accepted medical practice" for that condition. 20 C.F.R. § 404.1502. This requires an "ongoing treatment relationship" between the physician and the patient. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). In *Smith*, the Sixth Circuit held that a single visit with a physician does not create a treating relationship; similarly, a doctor who merely "completed a medical report, prescribed and refilled back pain medication, and denied additional medication when [the patient] returned seeking more" was not a treating source. *Id.* at 876.

In light of these precedents, Dr. Schuldheisz is not a treating source. Plaintiff's relationship with Dr. Schuldeisz began just months before ALJ Spangler's hearing. (Doc. # 7-1, at 509). Dr. Schuldheisz and Plaintiff had only three interactions: a "pulmonary consult" on May 10, 2010; a follow-up on August 12, 2010; and an RFC questionnaire, completed on September 7, 2010. (Doc. #7-1, at 509-18). As the Circuit Court held in *Smith*, these minimal contacts "fail to evince the type of ongoing treatment relationship contemplated by the plain text of the regulation." *Smith*, F.3d at 876.

5

### 2. Objective medical evidence counters Dr. Schuldheisz's opinion

Even if a treatment relationship existed, Plaintiff's argument fails because there is much objective medical evidence contrary to Dr. Schuldeisz's opinion. Although Plaintiff accuses ALJ Spangler of disregarding Social Security Ruling 96-2p, the record proves otherwise. An ALJ need only give a treating source controlling weight if that source does not conflict with the objective medical evidence. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); SSR 96-2p ¶ 3, 1996 WL 374188 (July 2, 1996). Applying this rule, the Sixth Circuit held in *Brock v. Commissioner* that when a treating source's ultimate medical conclusions are unsupported by the clinical data, then that source will not be afforded controlling weight. *Brock v. Com'r of Soc. Sec.*, 368 F. App'x 622 (6th Cir. 2010). In that case, the claimant's treating doctor indicated that the claimant was 100 percent disabled because of knee, ankle, and wrist problems. *Id.* at 624. However, that conclusion was not supported by any radiologic testing or diagnostic studies. *Id.* at 625.

Here, the ALJ considered the objective medical evidence in light of Dr. Schuldheisz's opinion and found that opinion wanting. The ALJ explicitly found that Dr. Schuldheisz's assessment was unsupported by the objective evidence on record. (Doc. # 7-1, at 36). While Dr. Schuldheisz opined that Plaintiff lacked the ability to lift any weight or even sit, walk, or stand for more than an hour each day, other medical evidence suggested otherwise. A February 27, 2009 x-ray revealed "no acute cardiopulmonary pathology." (Doc. # 7-1, at 305). A March 5, 2009 CT Scan indicated that Plaintiff suffered from "extensive," but "healed," granulomatous disease. (Doc. # 7-1, at 307). On April 9, 2009, pulmonary specialist Dr. John C. Rodrigues assessed that Plaintiff had mild obstructive airways disease with "normal" diffusion capacity. (Doc. # 7-1, at 312). Further, as the ALJ

noted, Dr. Schuldheisz's opinion is "inconsistent with [the doctor's] own treatment records. (Doc. #7-1, at 36). For instance, Plaintiff complained of only "intermittent flares of her condition ... and only had difficulty when working around such items as perfume and strong candles." (Doc. #7-1, at 36).

Moreover, it is important to note that ALJ Spangler did not conclude that Plaintiff suffered from no respiratory impairments. Far from it: in the RFC, ALJ Spangler explicitly found that Plaintiff's respiratory problems were sufficiently severe that she avoid "all exposure to dust, fumes, odors, and gases." (Doc. # 7-1, at 34). Yet the responsibility for weighing the evidence and drawing conclusions from it belongs to the ALJ–not to the Plaintiff, not to Dr. Schuldheisz, and not to the Court. 20 C.F.R. § 416.927, *see also Cutlip,* 25 F.3d at 286 (noting that federal courts do not weigh the evidence or decide questions of credibility). ALJ Spangler had ample justification to conclude that the medical evidence countered Dr. Schuldeisz's assessment. That conclusion was thus supported by substantial evidence.

### 3. The ALJ appropriately accorded Dr. Schuldheisz's opinion its due weight, and gave good reasons for doing so.

Furthermore, ALJ Spangler assigned Dr. Schuldheisz's assessment a degree of weight and justified that assessment. The Social Security agency promises claimants that it "will always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion." 20 C.F.R. § 416.1527(c)(2). The Sixth Circuit requires that ALJs follow this regulation or face remand. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

7

For reasons discussed above, the Court does not consider Dr. Schuldheisz a "treating physician" under applicable law. *See supra* Part IV.A.1. Although there was no "good reasons" requirement, ALJ Spangler still gave several good reasons for rejecting Dr. Schuldheisz's assessment. Among those, he noted Dr. Schuldheisz's assessment "is inconsistent with the objective medical evidence as a whole, and the claimant's own testimony regarding her abilities at the hearing." (Doc. # 7-1, at 36). On top of that, Plaintiff had recently started her own consignment shop and stated that she had problems only around certain fumes and odors. (Doc. # 7-1, at 36). The record indicated that Plaintiff "only wheezed intermittently and her cough was rare as well." (Doc. # 7-1, at 36). Perhaps most importantly, her oxygen saturation levels and pulmonary function were consistently normal. (Doc. # 7-1, at 36).

In contrast to this evidence, Plaintiff offers the following: Plaintiff's own testimony, some statements from Plaintiff's acquaintances, and treatment records, many of which are dated long after ALJ Spangler conducted his hearing.[1] While the record does suggest that Plaintiff suffers from some respiratory problems, the ALJ determined as much in the RFC. The issue is whether the Plaintiff's impairments are so severe as to justify a disability award, and the ALJ determined that they were not.

---

[1] Regarding those newer treatment records, the Court notes that this evidence was not available to ALJ Spangler when he made his decision. And because the Appeals Council did not undertake a merits review of Plaintiff's claim for benefits, this newer evidence was not reviewed by the Appeals Council, either. The Court is thus bound by *Cline v. Comm'r of Soc. Sec.,* 96 F.3d 146, (6th Cir. 1996). Under that holding, a district court cannot consider evidence that was unavailable during the ALJ hearing for purposes of *reversing* the ALJ. *Id.* at 148. The district court can, however, consider the new evidence for purposes of *remanding* the case to the ALJ, but only if the Plaintiff can show "good cause" for the omission of the evidence at the ALJ hearing. *Id.* at 148-49. Plaintiff has not even attempted to show good cause in this proceeding, so the Court will not consider that new evidence for any purpose in this case.

Plaintiff apparently wanted the ALJ to adopt the opinions of Dr. Schuldheisz verbatim, and incorporate those opinions into the RFC. Yet the ultimate responsibility for digesting the various pieces of evidence and incorporating them into an RFC belongs to the ALJ. 20 C.F.R. § 416.1527(d)(2). Even had the ALJ given Dr. Schuldheisz's opinion great weight, she would still not be obligated to adopt Dr. Schuldheisz's disability determination. *Id.* As agency regulations specify, an ALJ need "not give any special significance to the source of an opinion on issues reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(3). This is true even when the source of the opinion is a treating source. *Id.* Disability determinations are among those issues reserved to the Commissioner, *id.* at § 404.1527(d)(1), and the Court will defer to the Commissioner, through the ALJ, so long as his findings are supported by substantial evidence, even if the Court would have come to the opposite conclusion. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). ALJ Spangler considered Dr. Schuldheisz's in light of a thorough review of the record; his decision to afford those opinions little weight is thus supported by substantial evidence.

**B.     The ALJ's failure to supply the VE with an accurate hypothetical was harmless.**

When an ALJ considers whether a claimant can (or cannot) perform a substantial number of jobs that exist in the national economy, the ALJ may rely on the expertise of an agency vocational expert (VE). The function of the VE is to advise the ALJ of jobs "found among various categories of employment which the plaintiff can perform with her limitations." *Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168 (6th Cir. 2009). It is important to note that eliciting VE testimony is a circular process: the ALJ provides a

hypothetical to the VE, and the VE then testifies to the ALJ on the basis of that hypothetical. (Doc. # 7-1, at 37). In this case, the ALJ relied on the VE to conclude that there were jobs "such as inspector/tester, production worker, and packer" that Plaintiff could perform. (Doc. # 7-1, at 37). And because Plaintiff could perform those jobs, Plaintiff was not entitled to disability benefits. (Doc. # 7-1, at 37-38).

Plaintiff maintains that the initial step of the VE testimony process--when the ALJ supplies the VE with testimony–was hopelessly flawed. (Doc. #12, at 1). ALJ reliance on VE testimony is acceptable only to the degree that the VE testifies in response to an accurate hypothetical. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This requirement is rooted in common sense: if a claimant suffers from one set of impairments, but a VE offers testimony based on a different set of impairments, then the VE's testimony will fail to adequately capture what jobs the claimant can or cannot do.

The parties agree that the hypothetical supplied to the VE was inaccurate. (Doc. #12, at 16; Doc. #13, at 8-9). The ALJ's residual functionary capacity (RFC) determination requires that the Plaintiff "avoid all exposure to dust, fumes, odors, and gases." (Doc. # 7-1, at 34). Yet in the hearing, the ALJ supplied the VE with a hypothetical person who needed to avoid "*even moderate* exposure to fumes, odors, gas, dusts, poor ventilation, etc." (Doc. # 7-1, at 76) (emphasis added). The VE's testimony was based on a limitation–avoiding "even moderate exposure"–that was less restrictive than the actual RFC adopted by the ALJ, which required avoidance of "all exposure." This was unquestionably an error on the part of the ALJ, one in which he should attempt to avoid in the future. However, in this individual case, that error was harmless.

Although the ALJ made an error in his hypothetical question to the VE, "no principle of administrative law or common sense requires [the Court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Shkabari v. Gonzales*, 427 F.3d 324, 328 (6th Cir. 2005) (citing *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir.1989)). The Court will not send a case back to the ALJ unless doing so gives the Plaintiff a chance to succeed. Even a small chance of success on the merits suggests that the error is not a harmless one. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546 (6th Cir. 2004) ("[A] procedural error is not made harmless simply because [the aggrieved party] appears to have had little chance of success on the merits anyway.") (citing *Mazaleski v. Treusdell*, 562 F.2d 701, 719 n. 41 (D.C. Cir. 1977))

Here, Plaintiff has not shown that there is any chance that the ALJ's decision would be different absent the mistake. The critical question here is whether there are a "significant" number of jobs in the national economy that Plaintiff can perform. The ALJ found that there were, based largely on the testimony of the VE. (Doc. # 7-1, at 37-38). That VE's testimony, in turn, was based on the hypothetical supplied to the ALJ. (Doc. # 7-1, at 37-38).

There is no evidence that had the VE been supplied with a more accurate hypothetical, the ALJ would have found an absence of "significant jobs" in the national economy that Plaintiff could perform. According to the Dictionary of Occupational Titles (DOT), one of the jobs that the ALJ cited as within the Plaintiff's capacities–"inspector/tester"–requires no exposure to dust, fumes, odors, or gases. DICOT 759.684-074 (G.P.O.), 1991 WL 680404, at *4. The VE found that there were 2,000 inspector/tester jobs in the regional economy, and 98,000 of those jobs in the national

economy. (Doc. # 7-1, at 37). Further, as the Commissioner points out, the VE identified two other job types–information clerk with 1,100 jobs in the regional economy and 84,000 in the national economy; and data entry clerk, with 1,000 jobs in the regional economy and 97,000 in the national economy–that, according to the DOT, are appropriate for people who must avoid all exposure to dust and fumes. Dictionary of Occupational Titles, 237.367-022 (G.P.O.), 1991 WL 672188, at *4; Dictionary of Occupational Titles, 203.582-054 (G.P.O.), 1991 WL 671700, at *4.

The Sixth Circuit has provided no clear definition for how many jobs must exist in the national or regional economies to meet the "significant jobs" threshold. But the cases in which the Circuit has addressed the issue make clear that the number of jobs the Plaintiff can perform is sufficient to meet the "significant" threshold. In *Hillen v. Secretary of Health and Human Services*, 891 F.2d 290 (6th Cir. 1989) (unpublished table opinion), the Sixth Circuit held that "1,700 to 2,000 [regional] jobs represent a significant number of jobs under these circumstances." And in *Hall v. Bowen*, 837 F.2d 272 (6th Cir. 1988), the Sixth Circuit rejected a district court ruling that 1,350 to 1,800 jobs in the regional economy was "insignificant." *Id.* at 275. In fact, held the Circuit, a claimant who could perform 1,350 to 1,800 jobs in the regional economy was capable of performing a "significant number of jobs" under the terms of the Social Security Act. *Id.* As the *Hall* Court noted, the determination of whether a given number of jobs is "significant" is a highly fact-sensitive inquiry. *Id.* "The decision should ultimately be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Id.* According to the DOT, there are thousands of jobs in the regional economy that Plaintiff can perform, and hundreds of thousands of them in the national economy. This is, by any

definition, a significant number. Accordingly, any error regarding the hypothetical question to the VE was harmless and does not warrant a remand.

**C.     Plaintiff's condition does not entitle her to an "outright award of benefits."**

Plaintiff's "most important" assertion is that Dr. Schuldheisz's assessment, combined with the VE's testimony, "warrants an outright award of benefits" [sic].  Doc. #12, at 17. Plaintiff's argument here is confusing, but it appears to rest on two separate contentions.

The first is that because the ALJ recognized that Plaintiff must avoid "all exposure" to dust and fumes, and because every job imaginable requires at least some exposure to dust and the environmental particles that populate our air, Plaintiff is automatically disabled. Plaintiff points to no legal authority to support this proposition.  But the Court has neither the expertise nor the constitutional authority to declare by judicial fiat that no one with Plaintiff's disabilities could ever work.  *See Nw. Airlines, Inc. v. Transp. Workers Union of Am.*, AFL-CIO, 451 U.S. 77, 95 n. 34 (1981) ("Once Congress addresses a topic...the task of the Court is to interpret and apply statutory law, not create federal common law.")  If Plaintiff believes there should be a blanket disability determination for those who must "avoid all exposure to dust," she should make that case to the Social Security Administration or the United States Congress, not an Article III Court.[2]

The second is that, by the terms of the RFC adopted by ALJ Spangler, the VE conceded that no jobs exist that can accommodate a person who must avoid all exposure

---

[2] It is possible that Plaintiff means to claim that her disability is severe enough to qualify as one of the "listed impairments" under 20 C.F.R. pt. 404, subpt. P, App. 1.  The Court finds no evidence for this in the record, and, at any rate, it is not the Court's job to connect the dots for the Plaintiff.  The Court can only address those arguments that the Plaintiff actually makes.

to dust and fumes. (Doc. #12, at 17). Plaintiff cites repeatedly to record pages 78-79 to support this proposition. *See, e.g.*, Doc. #12, at 14; Doc. #12, at 16; Doc. #12, at 17 But pages 78-79 do not show what Plaintiff wants them to. On page 78, VE Ellis was asked about the occupational limitations for a person who needed to avoid "sweet-smelling perfumes." He responded: "I don't think I can answer that." (Doc. #7-1, at 78). When pressed, the only thing VE Ellis conceded is that there were no jobs with automatic bans on women wearing perfume. (Doc. #7-1, at 79). He never opined that Plaintiff could not work around women who wore perfume and even indicated that an employer could, theoretically, ban perfume in the workplace. (Doc. #7-1, at 79). This might be relevant if the VE testified that Plaintiff could never work around perfume, but the VE said nothing of the sort during the ALJ hearing. This section of the record does nothing to bolster Plaintiff's claim.

### V. CONCLUSION

Therefore, for the reasons stated herein, the Court concludes that ALJ Spangler's decision was made according to proper legal standards and is supported by substantial evidence. Accordingly,

**IT IS ORDERED** as follows:

1. The decision of the Commissioner is supported by substantial evidence and is hereby **AFFIRMED**;

2. Plaintiff's Motion for Summary Judgment (Doc. # 12) is hereby **DENIED**.

3. Defendant's Motion for Summary Judgment (Doc. # 13) is hereby **GRANTED**.

4. A Judgment affirming this matter will be entered contemporaneously herewith.

This 23rd day of September, 2013.



G:\DATA\SocialSecurity\MOOs\London\12-101 MOO granting MSJ.wpd